# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| LORETTA BROWN,           )<br>    Plaintiff,             )<br>                     )<br>v.                        )<br>                     )<br>KILOLO KIJAKAZI, *Acting*  )<br>*Commissioner of Social Security*,[1] )<br>    Defendant.        )  | CIVIL ACTION NO. 2:20-00428-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Loretta Brown brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon due consideration of the parties' briefs (Docs. 14, 15) and those portions of the transcript of the administrative record (Doc. 13) relevant to the issues raised, and

---

[1] As has been brought to the Court's attention in other Social Security appeals, Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. *See* https://www.ssa.gov/org/coss.htm; https://www.reuters.com/world/us/biden-fires-social-security-commissioner-2021-07-09/ (last visited Oct. 29, 2021). Accordingly, Kijakazi is automatically substituted for Andrew Saul as the defendant in this action under Federal Rule of Civil Procedure 25(d), and this action continues unabated. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title and docket of this case accordingly.

[2] "Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a)).

with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further administrative proceedings.[3]

## I.   *Procedural Background*

Brown filed the subject SSI application with the Social Security Administration ("SSA") on January 9, 2019. After it was initially denied, Brown requested, and on October 7, 2019, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On November 1, 2019, the ALJ issued an unfavorable decision on Brown's application, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 13, PageID.74-83). The Commissioner's decision on Brown's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's unfavorable decision on July 2, 2020. (*See id.*, PageID.61-65). Brown subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual,

---

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings, order the entry of judgment, and conduct all post-judgment proceedings in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19).

after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143

(1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no

reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

[5] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').");  *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v.*

---

court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

*Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but

the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for SSI requires that a claimant be disabled, 42 U.S.C. § 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In

---

they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously

and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look

only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Brown had not engaged in substantial gainful activity since the application date of January 9, 2019.[8] (Doc. 13, PageID.79-80). At Step Two,[9] the ALJ determined that Brown had the following medically determinable impairments: fibromyalgia, carpal tunnel syndrome of the right hand, tension headaches, hypertension, chronic neurotic depression, and chronic narcotic use. (Doc. 13, PageID.80). However, the ALJ determined that Brown did not have an impairment or combination of impairments that qualified as severe under the Social Security regulations. (*Id.*, PageID.80-83). Accordingly, the ALJ did not proceed to the remaining steps of the sequential evaluation, and found that Brown was not disabled under the Social Security Act during the adjudicatory period relevant to her application. (*Id.*, PageID.83).

## IV.   *Analysis*

Brown argues that the ALJ's Step Two finding is not supported by substantial evidence because the ALJ gave undue weight to the lack of medical evidence from

---

[8] Brown initially alleged a disability onset date of July 31, 2018, but amended it to the application date at the ALJ hearing. (*See* Doc. 13, PageID.77).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153.

after the application date. Relatedly, Brown argues that the ALJ failed in her duty to develop the record by not recontacting her treating physician or ordering a consultative examination to supplement the record. On these points, the undersigned finds no reversible error. However, the undersigned agrees with Brown that the ALJ did not sufficiently consider Brown's subjective complaints of her symptoms in finding that she did not suffer from a severe impairment.

Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031). *See also* 20 C.F.R. § 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

Brown's SSI application was filed on January 9, 2019, and she later amended

her disability onset date to match the filing date. Accordingly, she was required to show disability in or after January 2019. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (per curiam) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits *during a specific period of time*..." (emphasis added)); *Moore*, 405 F.3d at 1211 ("For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file."). The ALJ found that Brown was not suffering from a severe impairment or combination of impairments during that time, and thus ended the sequential analysis at Step Two. The ALJ determined that finding "is consistent with the absence of any medical treatment after the alleged onset date of disability…" (Doc. 13, PageID.82). As the ALJ discussed, the most recent record of an "office visit with a treating source was on December 21, 2018," at which Brown's treating physician, Park Chittom, M.D., noted "diagnoses of unspecified pain and fibromyalgia," but also noted that Brown "had intact, symmetric muscle tone and strength, and … had full range of motion in her shoulders and knees without tenderness[;]" and that her "pain was treated with prescription medications…" (*Id.*, PageID.81). Dr. Chittom further "noted [Brown] showed appropriate judgment and insight; she was alert and oriented to person, place, and time; and her long-term and short-term memory were intact…" (*Id.*).

The ALJ also discussed evidence from Dr. Chittom that post-dated the application date. On January 18, 2019, "Dr. Chittom wrote a letter summarizing [Brown's] impairments[,] list[ing] diagnoses of severe chronic neurotic depression, fibromyalgia, tension headaches, labile hypertension, and chronic narcotic usage."

(*Id.*, PageID.82). In that letter, Dr. Chittom opined "that [Brown] is 'relatively functional[.]' " (*Id.*, PageID.82 (alterations added)). However, he also acknowledged that he "had not seen [Brown] since December 2018," that the December 2018 examination was "for a routine visit[,]" and that her "physical examination was within normal limits at that time." (*Id.*, PageID.82, 348). Dr. Chittom also reported that Brown had "slowly but surely reduced the dosage and the frequency" of her pain medications, and that she was currently "on a controlled amount" of medication. (*Id.*, PageID.348). Then, "on September 12, 2019, Dr. Chittom completed a Disability Questionnaire and a Pain, Fatigue, and Weakness Clinical Assessment form[,]" in which he "opined [Brown] is unable to sustain work 8 hours a day, 5 days a week…" (*Id.*, PageID.82. *See also id.*, PageID.346-347).

Brown did not provide the ALJ any records of receiving medical treatment that post-dated her application date, and Dr. Chittom's most recent treatment notes, from shortly before that date, reported unremarkable findings and indicated Brown's pain was under control with medication, findings that were reaffirmed in his January 18, 2019 letter. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." (quotation marks omitted)). While Dr. Chittom did opine in his January letter that Brown was "relatively functional," and assessed even greater limitations in his September 2019 opinions, the ALJ found that those opinions unpersuasive due to a lack of treatment history since the application date (Doc. 13, PageID.82). *See generally* 20 C.F.R. § 416.920c (providing rules governing the

consideration of medical opinions for SSI claims filed on or after March 27, 2017). Brown does not specifically challenge that finding; regardless, the finding was reasonable because Dr. Chittom's opinions were not supported by, or consistent with, his own treatment notes from closest to the application date. *See id.* § 416.920c(b)(2) (noting that "supportability" and "consistency" are the most important factors an ALJ will consider when determining how persuasive to find a medical source's medical opinions).

Brown argues that the ALJ's Step Two finding could not be based on a lack of medical evidence, citing guidance in Social Security Ruling 85-28 stating that if a finding of no severe impairment "is not clearly established by medical evidence, … adjudication must continue through the sequential evaluation process." SSR 85-28, 1985 WL 56856, at *3 (1985).[10] Accordingly, Brown argues, the ALJ was required to recontact Dr. Chittom, or to order a consultative examination, before finding that Brown suffered from no severe impairment. However, the undersigned disagrees with Brown that SSR 85-28 imposes any sort of affirmative duty on an ALJ to produce evidence disproving severity, or that otherwise relieves the claimant of producing sufficient evidence of disability at each step of the sequential evaluation through Step

---

[10] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). Even though the rulings are not binding on [federal courts], [they are] nonetheless accord[ed] great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance. *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (unpublished).

Four. Moreover, the ALJ's decision makes clear that she considered the most recent medical evidence pre-dating Brown's SSI application in conjunction with the lack of treatment notes from after the application date. When a claimant is no longer receiving treatment for an alleged impairment, and the most recent notes from that treatment indicate mild and unremarkable findings, it is entirely reasonable for an ALJ to conclude from such evidence that the impairment is no longer substantially impacting the claimant.[11]

Brown asserts that the lack of supporting medical evidence was due to her having no medical insurance and being otherwise unable to afford more robust treatment. The Eleventh Circuit has held:

> The ALJ may consider the level or frequency of treatment when evaluating the severity of a claimant's condition, but the regulations specifically prohibit drawing "any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." Social Security R[uling] 96–7p (SSR 96–7p) at 7. When the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, [a] court will remand for further consideration. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)

---

[11] Pointing out that Dr. Chittom wrote in his June 2016 treatment note that Brown was presenting for her "annual check up" (Doc. 13, PageID.339), Brown argues her lack of treatment records post-dating her disability onset date should be excused because, as her last visit with Dr. Chittom occurred in December 2018, she was not due for another "annual" checkup until December 2019, after the date of the ALJ's decision. However, Dr. Chittom's notes do not support the conclusion that Brown invariably saw him on a once-every-12-months basis. After the June 2016 visit, Brown visited Dr. Park again in April, May, and December of 2017, and in February, May, August, and December of 2018. (*See* Doc. 13, PageID.328-336). Moreover, the December 2018 treatment note stated that there was to be another "[f]ollow-up as scheduled" (*id.*, PageID.327), and Dr. Park's prior notes generally recommended follow-ups in 6 or fewer months. (*See id.*, PageID.332, 340).

(per curiam) (internal quotation marks omitted); *accord Beegle v. Soc.
Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (per
curiam). However, if the ALJ's determination is also based on other
factors, such as RFC, age, educational background, work experience, or
ability to work despite the alleged disability, then no reversible error
exists. *Ellison*, 355 F.3d at 1275.

*Henry*, 802 F.3d at 1267–68.

Here, the ALJ addressed Brown's claim that "she has not received necessary
medical treatment due to lack of medical insurance," but noted that "the record is
absent of emergency room visits or attempts to secure medical care from other
charitable or sliding scale sources since the amended alleged onset date of disability."
(Doc. 13, PageID.81). Moreover, Brown's claimed indigency did not prevent her from
having a long treating relationship at least with Dr. Chittom,[12] and as discussed
above, Dr. Chittom's own notes from shortly before Brown's application date, along
with a lack of any evidence of treatment or attempt to obtain treatment after the
application date, reasonably support a conclusion that Brown was not under a severe
impairment in or after January 2019, *the start of the adjudicatory period relevant to
the ALJ's decision*.

Brown also argues that the opinion of Maria Wellman, M.D., the state agency
reviewing physician who denied Brown's SSI application at the initial level on
February 5, 2019, supports a finding of at least one severe impairment at Step Two,
since Dr. Wellman found Brown's fibromyalgia to be "severe." However, prior
administrative findings are not entitled to deference or given "any specific evidentiary

---

[12] As Dr. Chittom wrote on January 18, 2019, Brown had "been a patient of [his] for
many years, going back to 2001." (Doc. 13, PageID.343).

weight, including controlling weight," 20 C.F.R. § 416.920c(a), and, like medical opinions, are only persuasive to the extent they are supported by and consistent with the record evidence, among other factors. *See id.* § 416.920c(b)(2), (c). Brown's SSI application initially alleged disability beginning July 31, 2018, and she did not amend her alleged onset date to the application date until the ALJ hearing. (*See* Doc. 13, PageID.77). Reasonably concluding that Dr. Wellman's assessment was based in part of "evidence that was remote from the prior filing[,]" the ALJ found that the assessment was "not persuasive with regard to the period in question since January 9, 2019..." (*Id.*, PageID.81-82). As discussed above, substantial evidence supports that view.

To a significant degree, Brown appears to argue that the very nature of her medically determinable impairments demands a finding that they are severe. However, the "medically determinable" inquiry is distinct from the "severity" inquiry, *compare* 20 C.F.R. § 416.921 *with* 20 C.F.R. § 416.922, and "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. *See also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986) (" 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work").

Nevertheless, in addition to medical evidence, Brown also offered her own subjective testimony as to the effects of the symptoms of her impairments.

> If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, ... the ALJ must clearly "articulate explicit and

adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. *Foote*[ *v. Chater*], 67 F.3d [1553,] 1561–62[ (11th Cir. 1995) (per curiam)]. "Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court." 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)). The credibility determination does not need to cite " 'particular phrases or formulations' " but it cannot merely be a broad rejection which is " 'not enough to enable [the district court … ] to conclude that [the ALJ] considered her medical condition as a whole.' " *Foote*, 67 F.3d at 1561 (quoting *Jamison v. Bowen*, 814 F.2d 585, 588–90 (11th Cir. 1987)).

*Dyer*, 395 F.3d at 1210-11. *Accord* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *10

(Oct. 25, 2017).

Here, the ALJ addressed Brown's subjective complaints regarding her physical

impairments as follows:

The claimant primarily alleges disability on pain associated with fibromyalgia, migraines, and carpal tunnel syndrome of the right hand, which was diagnosed prior to the current application … In addition, the claimant stated that she has not been able to afford specialized treatment for her physical impairments due to a lack of income and medical insurance.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Doc. 13, PageID.81).[13]

---

[13] Statements by the ALJ about Brown's mental impairments have been omitted from this quoted portion, as Brown does not challenge the ALJ's decision with regard to her mental impairments.

While the ALJ's decision makes it seem that Brown's subjective testimony was limited to general complaints that her pain was disabling, Brown testified extensively and specifically at the ALJ hearing regarding the intensity, persistence and limiting effects of her pain. (*See* Doc. 13, PageID.99-111). It is unnecessary for purposes of this decision to detail all of it; examples include the following:

- Brown testified that her carpal tunnel syndrome affects her ability to lift objects and causes her to "drop things;" that she had dropped a bottle of water the day of the ALJ hearing; that her tendency to drop things has resulted in her no longer handling glasses and plates; and that she no longer clears the table after meals, does dishes, assists in meal preparation, or tries to change light bulbs because of this. (Doc. 13, PageID.99, 101).

- When asked by the ALJ if she could pick up a dime on a flat surface or "would have to slide it," Brown answered that "sometime I can pick it up and sometimes I can't." (*Id.*, PageID.99).

- Brown testified that she has problems writing with a pen and pushing and pulling on doors. These problems happen "all the time" and "almost continuously." (*Id.*, PageID.99-100).

- When asked by the ALJ, Brown responded that she cannot reach up to shampoo her hair, and that her sister does it for her. She also testified that her sister makes the beds, changes the sheets, and does the washing, though she admitted she could separate laundry. (*Id.*, PageID.100).

- When asked by the ALJ, Brown responded that she "couldn't pull … apart" a

bag of potato chips to open it. (*Id.*, PageID.101).

Brown's subjective testimony regarding the effects of her pain, if credited, could at the very least provide substantial evidence supporting Brown's "mild" burden of showing the existence of at least one severe impairment at Step Two. However, the ALJ's decision fails to address Brown's testimony with any sort of specificity, or to "articulate explicit and adequate reasons" why those statements were "not entirely consistent with the medical evidence and other evidence in the record[,]" let alone why they did not support a finding of at least one severe impairment. Rather, the undersigned concludes that the ALJ's credibility determination was an impermissibly broad rejection that is insufficient to enable this Court to conclude that the ALJ considered Brown's medical condition as a whole.[14] Accordingly, reversible error has been shown in the ALJ's consideration of Brown's subjective testimony as it relates to her finding of no severe impairment at Step Two.

Brown requests that the Commissioner's decision be reversed with a finding by this Court that she is disabled, and only requests in the alternative a remand to the Commissioner for further proceedings. The Eleventh Circuit has recognized that

---

[14] In rejecting Dr. Chittom's opinion, the ALJ noted that his "responses to the series of questions on the pain, fatigue, and weakness questionnaire would have necessarily been based on the subjective reports of the claimant, which are not supported by any medical evidence from the period in question." (Doc. 13, PageID.82). To the extent this was part of the ALJ's credibility determination, it sheds no further light on why the ALJ found Brown's subjective complaints so incredible as to preclude the finding of even a single severe impairment at Step Two. Even if the record did not support Dr. Chittom's opinion, Brown was not required to show that her impairments were consistent with the more extreme limitations in that opinion in order to meet her "mild" Step Two burden of showing a single severe impairment.

reversal with remand to the Commissioner for further proceedings is generally warranted where, as here, "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *id.,*[15] Brown has failed to convince the undersigned that this standard is met here, particularly because the ALJ stopped her analysis at Step Two and therefore did not consider the record evidence as it related

---

[15] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts … The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

to the later steps of the sequential evaluation. While Brown claims that she should be found disabled under Grid Rule 202.04 because she cannot perform even medium-exertional work, that is a determination for the Commissioner to make in the first instance after careful consideration of the record. *Cf.* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.").

Moreover, the United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002). *See also McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) ("[I]t would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases. The Congressional scheme is that, governed by standards promulgated by Congress and interpreted by the courts, the administrator is to find the facts case by case and make the determination of presence or absence of disability, and that, in the course of judicial review, the courts are then to respect the administrative determination."). The undersigned finds no reason to believe this case is one of the "rare circumstances" where remand to the agency is not the proper

remedy.

Accordingly, the Commissioner's final decision denying Brown's application for benefits is due to be **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings consistent with this decision.

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Brown's January 9, 2019 SSI application is **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Brown a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Brown's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until 30 days after the date of receipt of a notice of award of benefits from the SSA, should Brown be awarded benefits on the subject applications following this remand.[16] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall

---

[16] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the

be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 1st day of November 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").